UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICIA PARRISH,

    Plaintiff,

v.                                                                                                  Case No. 3:22-CV-00244

FLORIDA DEPARTMENT OF HEALTH,
and PATRICIA RYLAND, individually.

    Defendants.
_____

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, PATRICIA PARRISH (hereinafter referred to as "Plaintiff" and/or "Ms. Parrish"), through her counsel, Derek Smith Law Group, PLLC, hereby complains of Defendants, FLORIDA DEPARTMENT OF HEALTH (hereinafter referred to as "DOH") and PATRICIA RYLAND (hereinafter referred to as "RYLAND") (collectively referred to as "Defendants"), and alleges as follows:

### NATURE OF CASE

1. Plaintiff brings this action to recover damages against Defendant FDOH for alleged retaliation under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

2. Plaintiff brings this action to recover damages against Defendant RYLAND for alleged retaliation in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

3. This action seeks damages to redress the injuries Plaintiff has suffered as a result of being retaliated against by her employer solely for presenting a complaint of discrimination on behalf of her subordinates, resulting in both retaliation and hostile work environment.

**JURISDICTION AND VENUE**

3. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and 1981.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants are and were located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

6. Plaintiff was employed by Defendant FDOH within Duval County, Florida.

**PROCEDURAL REQUIREMENTS**

7. Plaintiff has complied with all statutory prerequisites to file this action.

8. On or around October 1, 2018 Plaintiff dual filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge number 510-2018-06263, and the Florida Commission on Human Relations ("FCHR").

9. An EEOC filing automatically operates as a FCHR filing.

10. On or around July 29, 2021, the EEOC issued its Letter of Determination finding reasonable cause, and the parties attempted to conciliate.

11. On or around December 14, 2021, the conciliation was deemed unsuccessful and a right to sue was issued.

12. This action is being commenced within ninety (90) days of receipt of the issuance of the EEOC's Right to Sue.

13. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendant.

**PARTIES**

14. At all times material, Plaintiff is an individual white woman who resides in the State of Florida.

15. At all times material, Defendant is an agency existing by the virtue and laws of the State of Florida.

16. As of 2018, Defendant FDOH's Employee/Manager/Supervisor and Defendant Patricia Ryland (hereinafter referred to as "RYLAND") is an individual woman and was Plaintiff's direct supervisor, the Chemist Administrator at Newborn Screening (NBS) Laboratory of the Department of Health (DOH) in Jacksonville, Florida.

17. As of 2018, RYLAND held supervisory authority over Plaintiff, controlling various aspects of her employment, including but not limited to the power to hire and fire Plaintiff and the ability to direct her work.

18. At all times material, Defendant's Employee/Manager/Supervisor Susan Crowe (hereinafter referred to as "CROWE") is an individual woman and was Plaintiff's supervisor, the Laboratory Director at NBS Laboratory of DOH in Jacksonville, Florida.

19. At of 2018, CROWE held supervisory authority over Plaintiff, controlling various aspects of her employment, including but not limited to the power to hire and fire Plaintiff and the ability to direct her work.

## FACTUAL ALLEGATIONS

20. In or around 2010, Ms. Parrish began her employment with Defendant FDOH.

21. At all times relevant, Ms. Parrish was employed as Chemist Administrator.

22. In 2016, Ms. Parrish Plaintiff recommended to Dr. Bonnie Taffee, Chief Chemist, that Defendant FDOH hire temporary nontechnical employees to help with nontechnical laboratory duties.

23. Plaintiff was the direct supervisor of the nontechnical temps at NBS Laboratory at the Jacksonville Florida DOH. Plaintiff oversaw bringing the first temporary employees at Defendant's. Plaintiff conducted interviews with candidates, completed and processed all necessary paperwork for hiring, and worked with the Safety Officer to provide universal precautions and introductory initial training. Plaintiff was also responsible for their time submissions.

24. At all times relevant, Plaintiff oversaw the training and hiring of Lab Clerks Barbara Garrett (Black) ("Garrett"), Sharon Potts (Black) ("Potts"), Katrice Brown (Black) ("Brown"), and Melissa Rodriguez (white, non-Hispanic/Latino) ("Rodriguez").

4

25. Garrett, Potts, Brown, and Rodriguez, like all NBS Laboratory employees, were trained and rotated to work a Saturday schedule. This rotation applied to all Chemist Administrators and all technical and clerical staff.

26. Dr. Bonita Taffee created a temporary Administrative Assistant position at a higher salary and gave Ms. Rodriguez this work assignment. Dr. Taffee verbally instructed Ms. Parrish to forward all uncompleted paperwork to Ms. Rodriguez as she was to assist all Chemist Administrators.

27. Ms. Parrish was never informed that a temporary Administrative position was created or that Ms. Rodriguez was moved to it.

28. Ms. Garrett, Ms. Potts, and Ms. Brown were comparatively qualified for the temporary Administrative position but were neither notified that such position had become available nor interviewed for the position.

29. Sometime thereafter, Defendant RYLAND (White/Caucasian) took over Dr. Taffee's Chief Chemist duties in addition to her Chemist Administrator duties. Ms. Rodriguez then became the subordinate of both Defendant RYLAND, as an Administrative Assistant, and Ms. Parrish, as a general temporary hire at Defendants.

30. Following this transfer, Defendant Ryland began to display preferential behavior towards Ms. Rodriguez.

31. By means of example, but not meant to constitute an exhaustive list, all lab staff at NBS, technical and non-technical, were required to correctly list their hours on their time sheets. If any lab staff member was unable to come in, due to sickness or absence, advance notice was required. As per lab policy, the absence had to be recorded in the "call-in log."

5

32. Ms. Parrish observed Ms. Rodriguez arrive late on multiple occasions. Ms. Rodriguez would fail to reflect her tardiness on her time sheets. Despite the obvious discrepancy between Ms. Rodriguez's actual arrival and timesheets, Defendant RYLAND approved every single one without issue.

33. Ms. Rodriguez was also not subject to the lab's absence policy. On one occasion, Ms. Rodriguez was absent for five (5) days without prior notice. Ms. Parrish, who had knowledge of Ms. Rodriguez's absence, recorded Ms. Rodriguez's absence in the "call-in log" after observing Defendant RYLAND's lack of action.

34. Mr. Bailey (first name unknown), whose office is directly next to Ms. Parrish's, also displayed preferential treatment towards Ms. Rodriguez. In the mornings, Ms. Rodriguez would spend 15-30 minutes chatting and laughing with Mr. Bailey in his office. No other lab staff was allowed to delay their work once reaching their workstations. On days where Ms. Rodriguez arrived late to her work assignments sick, she would be allowed to rest, facedown, on her desk or go into Mr. Bailey's office to rest. No other lab staff was allowed to delay their work due to illness; staff was either instructed to go home or continue working.

35. On or around June 27, 2018, Ms. Parrish's three Black Lab Clerks, Ms. Garrett, Potts, Brown, directly reported to Plaintiff that the Saturday work schedules were not being fairly shared by one other temporary employee at Defendant: Rodriguez. When Plaintiff approached Rodriguez, Rodriguez replied that Defendant RYLAND specifically instructed her to not work on Saturdays. During the exchange, Rodriguez got upset and refused to work the following Saturday.

36. On or around June 27, 2018, Ms. Parrish wrote Defendant RYLAND, her supervisor, an email presenting the concerns of Garrett, Potts, and Brown. Ms. Parrish explained her subordinate's concerns of favored treatment regarding Saturday scheduling and Plaintiff's short conversation with Ms. Rodriguez. Ms. Parrish then sought clarification on what RYLAND would like for her to relay to her subordinates. Plaintiff also alerted RYLAND to the staff's observance of her apparent preferential treatment of Rodriguez, specifically how she refers to her as "Honey" and "Dear."

37. Ms. Ryland was not known to refer to any lab staff as "Honey" or "Dear."

38. On or around June 28, 2018, Rodriguez and RYLAND called Ms. Parrish, Garrett, Potts, and Brown to report to the fourth floor for a meeting at the end of their shifts.

39. The meeting was conducted to address the complaint Plaintiff had presented on behalf of Garrett, Potts, and Brown. However, RYLAND did not follow the appropriate chain of command. Ms. Parrish, being the direct supervisor and presenter of the complaint, was to be the initiator and orchestrator of any meeting regarding the complaint.

40. Nonetheless, Ms. Parrish was present to assist her subordinates in the discussion of their complaint. Ms. Parrish began to explain the issue on behalf of her subordinates. Rodriguez interrupted continuously and, eventually, became belligerent. Rodriguez began to raise her voice at Ms. Parrish, waving and pointing her finger in Ms. Parrish's face. When Brown attempted to explain her issue with the rotation schedule, specifically her obstacles with childcare duties, Rodriguez interrupted and berated Brown equally.

41. Rodriguez was the only person who spoke at the June 28 meeting. Rodriguez shouted down Brown and Ms. Parrish whenever either tried to speak. Defendant RYLAND allowed

7

Rodriguez to publicly berate Ms. Parrish causing Ms. Parrish to feel humiliated and embarrassed.

42. At all times relevant, Ms. Parrish repeatedly asked Defendant RYLAND to intervene when Rodriguez continued to use profanity, abusive language, and hostility.

43. At no point were any of the Lab Clerks' concerns or complaints addressed. In fact, neither Garrett, Potts, nor Brown were given an opportunity to speak at the June 28 meeting.

44. There was no reason for Rodriguez, the subject of the Lab Clerks' complaints, to be present and leading the meeting.

45. Ms. Parrish was encouraged by Sherry Ray, Administrator over Date Entry, to file an incident report to CROWE. Ms. Ray had just recently experienced abusive and insubordinate behavior from a temporary employee in her area. The temporary employee's work assignment was ended as a result. Previous temporary employee's work assignments at Defendants were similarly ended when they displayed the behavior Rodriguez did during the June 28 meeting.

46. On or around June 28, 2018, Ms. Parrish reported both the June 28 incident and the Lab Clerks' initial complaint to the CROWE and the HR Director, Theresa Taylor ("Taylor"). Garrett, Potts, and Brown all wrote independent witness statements (regarding the June 28 meeting) that were submitted with Ms. Parrish's incident report to CROWE and Taylor.

47. On or around June 29, 2018, Rodriguez's desk was relocated to be right outside Ms. Parrish's office door. Ms. Parrish wrote to HR Director, Ms. Taylor, to express her concerns over Ms. Rodriguez's mental health considering the hostility she directed towards Ms. Parrish.

48. On or around July 3, 2018, Ms. Parrish emailed Patty Lewandowski ("Lewandowski"),

Bureau Chief, expressing that her concerns for her safety and the mental status of Rodriguez. Lewandowski directed Ms. Parrish to Taylor. Taylor then directed Ms. Parrish back to CROWE.

49. On or around July 10, 2018, CROWE called a meeting to address Ms. Parrish's incident report, including the written witness statements attached. During this meeting, Ms. Parrish asked RYLAND why she had allowed Rodriguez to verbally assault her during the June 28 meeting. RYLAND replied, "**I was letting her vent at you. I thought it was important to let her continue to vent at you**." Ms. Parrish asked CROWE to include the verbal transaction in her investigation of the incident as well as RYLAND's retraction of her verbal statement that Ms. Parrish had been unprofessional during the June 28 meeting.

50. In early July 2018, Defendant, by and through the actions of CROWE and RYLAND, removed Ms. Parrish's Lab Clerks, Garrett, Potts, Brown, and placed them RYLAND's direct supervision. RYLAND and CROWE claimed the removal was a business decision

51. Despite Ms. Parrish being the direct report for NBS Lab temporaries for several years, she was not involved in any discussions regarding "business plans."

52. RYLAND assigned Rodriguez to be Garrett's, Potts', Brown's direct supervisor and timekeeper.

53. On or around July 9, 2018, Ms. Parrish requested CROWE or RYLAND email a copy of the business plan. Such plan was never produced.

54. At all times material, Rodriguez was never added to the Saturday rotation, disciplined, or punished for her actions on June 28.

55. On or around October 1, 2018, Ms. Parrish left for another department due to the unaddressed and consistent hostility and retaliatory actions of the Defendants.

9

56. Ms. Parrish claims constructive discharge.

57. That as a result of Defendants' conduct and comments, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

58. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed. Plaintiff now suffers from severe anxiety and depression as a result of Defendants' harassment, discrimination, retaliation, and denial of family medical leave.

59. As a result of Defendants' discriminatory and harassing treatment of Plaintiff, Plaintiff suffered and continues to suffer severe emotional distress.

60. Defendants, by and through its owners and managers, unlawfully constructively discharged Ms. Parrish because of her presentation of her subordinate's complaints of discrimination and preferential treatment.

61. The above are just some examples, of some of the discrimination, harassment, and retaliation to which Defendants subjected Plaintiff.

62. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

63. Defendants has exhibited a pattern and practice of not only discrimination but also retaliation.

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary

losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT ONE

### *Retaliation in Violation of TITLE VII  (against Defendant FDOH only)*

65. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 64, and further alleges as follows.

66. Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harassment.

67. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

68. Plaintiff opposed Defendant's discriminatory treatment by complaining to Defendant's agents/supervisors CROWE and RYLAND about the unlawful discrimination the Lab Clerks was experiencing.

69. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendant's employees had occurred.

70. At all times relevant, the unlawful discrimination by Defendant's employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

71. At all material times, the employers exhibiting discriminatory and harassing conduct against Plaintiff and Plaintiff's Lab Clerks possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

72. Following Plaintiff's opposition to Rodriguez, RYLAND, and CROWE's conduct and her numerous complaints to Defendant, the hostility increased dramatically.

73. Defendant's agents/supervisors RYLAND and CROWE retaliated against Plaintiff, including by continuing to subject Plaintiff to harassment; moving Plaintiff's harasser to be seated right outside Plaintiff's office; harshly criticizing Plaintiff's work performance; removing Plaintiff's Lab Clerks; and ultimately causing Plaintiff's constructive discharge after she complained of and reported the discrimination and harassment.

74. Plaintiff opposed discriminatory and harassing conduct by Defendant which is prohibited by Title VII when she complained to Defendant's agents RYLAND, CROWE, and Human Resources about the discrimination and harassment as described and set forth above.

75. Plaintiff's complaints involved Defendant's unlawful, discriminatory, and harassing actions and therefore constituted protected activity under Title VII.

76. Plaintiff complained of Defendant's discrimination and harassment of the black temporary Lab Clerk employees.

77. After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Plaintiff by among other things, wrongfully and unlawfully constructively discharging Plaintiff's employment.

78. The adverse employment actions by Defendant, as described and set forth above, were the result of Plaintiff's opposition to the discriminatory and harassing conduct to which she was subjected to in violation of Title VII.

79. The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.

80. Defendant's retaliation would not have occurred but for Plaintiff's participation in a protected activity.

81. In subjecting Plaintiff to adverse employment action because of protected class complaint, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, and/or privileges of her employment.

82. As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

83. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

84. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

85. Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

   a. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT TWO

*Retaliation in Violation of Florida Statute Section 760.10 (against Defendant FDOH only)*

86. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 64, and further alleges as follows.

87. The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA. § 760.10(7), Fla. Stat. (2020).

88. Florida Statute Section 760.10(7) provides that "[i]t is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

14

89. Plaintiff opposed the discriminatory conduct of Defendant when she complained to CROWE, RYLAND, and Human Resources about the discrimination and increasingly hostile work environment that she was subjected to as described above.

90. At all times relevant, the unlawful retaliation by Defendant towards Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by the FCRA which would not have occurred but for that opposition.

91. At all times relevant, Defendant's agents/supervisors acted intentionally and with reckless disregard of Plaintiff's rights protected by the FCRA.

92. At all material times, the Defendant's agents/supervisors exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

93. Defendant's agents/supervisors CROWE and RYLAND retaliated against Plaintiff by continuing to subject Plaintiff to harassment and discrimination, harshly criticizing Plaintiff's work performance, discouraging Plaintiff from pursuing her complaints, and ultimately causing Plaintiff's constructive discharge after she complained of and reported the discrimination and harassment she experienced.

94. As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

95. Conduct of Defendant and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

96. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

97. Plaintiff Parrish has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

### COUNT THREE

*Retaliation in violation of <u>42 U.S.C. § 1981</u> (against both Defendants)*

98. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 64, and further alleges as follows.

99. Plaintiff engaged in protected activity by complaining of the illegal conduct to the Defendants and opposing Defendants' unlawful actions.

100. Plaintiff was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place, her ultimate unlawful constructive discharge.

101. There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity, as the adverse employment actions would not have occurred but for Plaintiff's opposition to and participation in a protected activity.

102. The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

103. As a result of Defendants' violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship, which provided substantial compensation and benefits to the Plaintiff.

104. As a result of the Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

105. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

106. Plaintiff PARRISH has been damaged by the illegal conduct of Defendants.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendants:

a. Adjudge and decree that Defendants have violated Section 1981, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendants pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment requiring that Defendants pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable before a jury.

Dated: September 23, 2022

**DEREK SMITH LAW GROUP, PLLC**
701 Brickell Avenue, Suite 1310
Miami, Florida 33131
P.: (305) 946-1884


s/ Lauren Wilson_____
Lauren Wilson, Esq.
Fla. Bar No. 1024850
Lauren@dereksmithlaw.com

*Attorneys for Plaintiff Patricia Parrish*